## CLEVELAND, CINCINNATI, CHICAGO & ST. LOUIS RAILWAY COMPANY v. PEIRCE, ADMINISTRATRIX.

[No. 4,627.    Filed December 6, 1904.]

1. PLEADING.—*Names of Parties.*—*Idem Sonans.*—Where the caption of a complaint shows that the plaintiff sues as "administratrix of the estate of Ferdinand N. Armstrong, deceased," and the complaint shows that suit is brought on account of the death of "Fernando W. Armstrong," such complaint is bad on demurrer for want of facts, since such names import different persons and are not *idem sonans.* p. 190.

2. SAME.—*Middle Name.*—While it is not necessary to aver the middle name or the initial thereof, yet, if either be used, a mistake therein constitutes a fatal variance.    p. 192.

3. SAME.—*Complaint.*—*Defective Ways.*—*Negligence of Fellow Servants.*—Where, in a complaint by a servant against his master for damages for personal injuries, it is alleged that the injuries complained of were caused by negligence of defendant and its servants, and by defective ways, but the specific acts of negligence charged relate to the negligence of persons in the service of defendant causing a freight-car to run without warning upon a switch and striking the car decedent was on and thus causing injuries from which he died, such complaint fails to state a cause of action, since it does not show that such servants were engaged in the master's service, nor that the injuries happened in the performance of such service.  p. 192.

From Marion Circuit Court (10,537)  *H. C. Allen,* Judge.

Action by Elizabeth Peirce as administratrix of the estate of Ferdinand N. Armstrong, deceased, against the Cleveland, Cincinnati, Chicago & St. Louis Railway Company. From a judgment rendered on a verdict for $2,250, defendant appeals. *Reversed.*

*B. K. Elliott, W. F. Elliott, F. L. Littleton* and *J. T. Dye,* for appellant.

*J. M. Bailey* and *F. C. Durham,* for appellee.

WILEY, J.—Appellee sued appellant to recover damages for causing the death of the decedent, alleging that it resulted from appellant's negligence. Her complaint was in one paragraph, to which a demurrer was overruled. Appellant's motion to make the complaint more specific was also overruled. Appellant answered in two paragraphs, to the second of which appellee replied in three paragraphs, to the second and third paragraphs of which a demurrer was overruled. Trial by jury, verdict and judgment for appellee. The jury also found specially by its answers to interrogatories addressed to it. Appellant's motions for judgment on the answers to the interrogatories, and for a new trial, were overruled. All the rulings adverse to appellant are assigned as errors.

In her complaint appellee avers that appellant owns and operates a system of railroads, with one of its main lines running from Indianapolis, Indiana, to Cincinnati, Ohio; that another of its main lines runs from the city of Louisville, Kentucky, in a northerly direction to St. Joe, Michigan; that said two lines cross and intersect each other at the city of Greensburg, in the State of Indiana; that said facts existed on the 18th day of September, 1898; that on said date "one Fernando W. Armstrong was employed by and working for said company in the capacity of brakeman, and was working upon the main line from Indianapolis to Cincinnati, and had been so employed for some time; that on said day said Armstrong was acting as brakeman in the discharge of his duties on said railroad, and was in the act of delivering cars from the line upon which he was working to the main line from Louisville to St. Joe; that at said time, "while in the discharge of his duties, and using due care and caution, the said Armstrong, by reason of the carelessness and negligence of said defendant and its servants and employes, and by reason of the defective ways, works, cars and machinery, known to the defendant, received injuries from which he died; that by reason of the

carelessness and negligence of the person or persons in the service of the defendant who had charge of the switch yard and roundhouse at Greensburg, controlled by said defendant, a freight-car was carelessly and negligently caused, suffered and allowed to run out of said switch yard upon one of the switch tracks in said yard at 10 o'clock at night, without anyone upon or in charge or control of the same, and without any light thereon, and without any brake or brakes being set thereon or attached thereto; that said freight-car ran off of said switch upon the line that the train the said Armstrong was aboard, ran into, upon and over the car or coach that said Armstrong was in and upon, thereby cutting, maiming and wounding said Armstrong's entire body, from which injuries he died." It is then averred that he left surviving him the appellee, who was his wife, and one son thirteen years old, and that the appellee was appointed and qualified as administratrix of his estate.

1.   The capacity in which appellee sues is designated in the complaint as "Elizabeth Peirce, administratrix of the estate of Ferdinand N. Armstrong, deceased." The complaint shows that the person whose death was caused by appellant's alleged negligence, and for whose death she seeks to recover damages, was "Fernando W. Armstrong," and not the decedent of whose estate she is administratrix. Under the statute, a person suing in the capacity of administratrix can only recover for the use and benefit of the estate she represents, or, in such case as this, for the use and benefit of the next of kin of the decedent. It is true that the complaint alleges that Fernando W. Armstrong was the husband of the plaintiff, but she is not suing for the death of Fernando W. Armstrong, for she sues as administratrix of the estate of Ferdinand N. Armstrong. She could be such administratrix, but could not sue to recover damages for the death of Fernando W. Armstrong, as her husband, in that capacity.

Appellee's counsel concede the discrepancy which is apparent upon the face of the complaint, but seek to avoid its effect by asserting that the two names are *idem sonans.* We can not agree with this assertion. The well-understood meaning of the term *idem sonans* is "sounding the same; substantially identical in sound." Anderson's Law Dict., 520. The names "Ferdinand" and "Fernando" do not sound the same, nor are they substantially identical in sound. Both words are common Christian names, and their pronunciation and sound radically different. The rule by which to determine whether two names are *idem sonans* has been stated by the Supreme Court as follows: "If the names may be sounded alike, without doing violence to the power of the letters found in the variant orthography, then the variance is immaterial." *Black* v. *State* (1877), 57 Ind. 109. Measured by this rule, it was held in the case just cited that the names McKaskey or McKlaskey and McCaskey, were not *idem sonans.* And in *Vance* v. *State* (1879), 65 Ind. 460, it was held that Dellia Weaver and Della Weaver were not *idem sonans.* Also, that A. B. Robinson and Alexander Robinson were not. *Zellers* v. *State* (1856), 7 Ind. 659. Nor Wortman and Workman in *City of LaFayette* v. *Wortman* (1886), 107 Ind. 404. Nor Hannah McCormick and Hanna McGormmick in *State* v. *McCormick* (1895), 141 Ind. 685.

In the case we are considering, the names "Ferdinand" and "Fernando," as they appear in the title of the cause and body of the complaint, can not be "sounded alike," even by "doing violence to the power of the letters in the variant orthography." In "Ferdinand" we have the vowel "i," and no letter to correspond with it in sound in "Fernando," while in the latter name we have the vowel "o," and no corresponding letter in sound in the former. The only syllable in the two names that has the same sound,

is the first, "Fer," while the other two are essentially and radically different.

2.   But in addition to this well-marked difference in the Christian names, we also find an irreconcilable difference in the initial of the middle name. As a legal proposition, middle names are often unimportant at law; but where they, or the initials thereof, are used, they may become important for identification, and in such case a substantial or distinguishable difference is fatal to the invocation of the doctrine of *idem sonans*. And this is especially true where there is. a difference, however slight, in the Christian names.   The prevailing rule now seems to be that, while it is not necessary to give the middle name or initial, yet, if either be given, a mistake therein constitutes a fatal variance.   14 Ency. Pl. and Pr., p. 276; *State* v. *Hughes* (1851), 1 Swan. (Tenn.) 261; *Price* v. *State* (1850), 19 Ohio 423; *King* v. *Clark* (1841), 7 Mo. 269; *Commonwealth* v. *Buckley* (1887), 145 Mass. 181, 13 N. E. 368. The letters "N" and "W" are not consonant in sound, and have no similarity.   Presumptively the names Ferdinand N. Armstrong and Fernando W. Armstrong, designate two different persons.   *Massillon Engine, etc., Co.* v. *Churchill* (1897), 68 Minn. 393, 71 N. W. 399.   We are dealing with a question of pleading, and not one of proof. The question before us may be tested by a demurrer to the complaint for want of sufficient facts to constitute a cause of action, for it embraces also the right of the particular plaintiff to maintain the suit.   *Farris* v. *Jones* (1887), 112 Ind. 498; *Pence* v. *Aughe* (1885), 101 Ind. 317; *Wilson* v. *Galey* (1885), 103 Ind. 257; *Walker* v. *Heller* (1885), 104 Ind. 327; *Frazer* v. *State* (1886), 106 Ind. 471.   Appellee, in the capacity in which she sues, is a stranger to the cause of action made by the complaint, in that she has no interest in the subject-matter of the litigation.

3.   But there is another objection to the complaint which makes it bad.   The complaint avers that the injury com-

plained of was caused by the negligence of "defendant and its servants, and by reason of defective ways," etc.  But the specific acts of negligence relied upon relate to the "negligence of the person or persons in the service of the defendant," in that they "carelessly and negligently caused, suffered and allowed" a freight-car to run "upon one of the switch tracks," against a car that decedent was on.  The pleader having stated the specific acts of negligence relied upon, and having also stated that such acts were those of appellant's servants, he is bound thereby. Hence the rule applies that where a complaint states the specific facts constituting the defendant's negligence, it will be tested by the facts alleged, without aid from an allegation that the acts charged were negligently done or omitted.  *Scheiber* v. *United Tel. Co.* (1899), 153 Ind. 609, 612; *Cleveland, etc., R. Co.* v. *Berry* (1899), 152 Ind. 607; *Cincinnati, etc., R. Co.* v. *Voght* (1901), 26 Ind. App. 665; *Peirce* v. *Oliver* (1897), 18 Ind. App. 87.  Thus it appears from the plain language of the complaint that appellant is not charged directly with any negligent act, for there is no question but that the complaint proceeds upon the theory that the injury resulted from the negligent acts of its servants, and such acts are specifically designated.

It was said in *Cincinnati, etc., R. Co.* v. *Voght, supra:* "The master is not liable for any and every negligent act of his servant.  It is necessary to show that the negligence was committed by the servant while engaged in the service and in some way connected with the doing of the service. It does not necessarily follow because the employes were in charge of appellant's engine that they were then, while running the engine, engaged in appellant's service.  The presumption might be that they were, but no presumptions are indulged in favor of the pleader.  The employes may or may not have been acting in the line of their duty."  The

case from which we have quoted is decisive of the question now before us.

As far as the complaint goes is to aver that the injury to appellee's decedent was the result of the negligence of appellant's servants who were in charge of the "switch yard and roundhouse," etc. It is not shown by any averment of the complaint that the employes were in the line of their duty when they committed the acts charged. For the reasons stated, the complaint was vulnerable to the attack of the demurrer.

As the judgment must be reversed because of the insufficiency of the complaint, other questions presented by the record need not be decided.

Judgment reversed, and the court below is directed to sustain appellant's demurrer to the complaint.