C. F. HAYER v. FRANK E. COMSTOCK, Appellant.

Bankruptcy: CONTINGENT LIABILITIES BARRED BY DISCHARGE. Bankruptcy Law U. S. 1898, section 17, provides that a discharge in bankruptcy shall release a bankrupt from all of his provable debts; and section 63, subdivision 1, includes among provable debts a fixed liability as evidenced by an instrument in writing absolutely owing at the time of the filing of the petition, whether then payable or not. Section 57, paragraph "i" prescribes that, wherever a creditor whose claim against a bankrupt estate is secured by the individual undertaking of any person, fails to prove such claim, such person may do so in the creditor's name, and, if he discharge such undertaking in whole or in part, he shall be subrogated to that extent to the rights of the creditor. Supreme Court General Orders and Forms in Bankruptcy, order 21, paragraph 4 (18 Sup. Ct. Rep. vii.), authorizes the claims of persons contingently liable for the bankrupt to be proved in the name of the creditor, when known, by the party contingently liable, and, when the name of the creditor is unknown, such claim may be proved in the name of the party contingently liable. *Held*, that the claim of a surety of a bankrupt on a note which was listed and proved in the bankruptcy proceedings by the creditor, and which the surety was subsequently obliged to pay, was barred by the discharge in bankruptcy.

*Appeal from Wright District Court.*—HON. S. M. WEAVER, Judge.

FRIDAY, DECEMBER 20, 1901.

PLAINTIFF states as his cause of action that he executed a promissory note with defendant, and as his surety, to the State Bank of Eagle Grove; that the defendant failed to pay said note; and the plaintiff was compelled to, and did, pay the same to the bank on or about April 1, 1899, in the sum of $193.66, for which, with interest, he asks judgment. The defendant answered that on December 6, 1898, he was duly and legally adjudged to be a voluntary bankrupt under the

acts of congress; that said note was scheduled as due to said
bank; that the bank was notified of said proceeding; that
the claim was a provable debt; that the bank filed said note
and proved the same as a debt against defendant; that plain-
tiff had actual knowledge of said proceedings; and that on
April 3, 1899, defendant was discharged from all his debts,
and a certificate to that effect issued.    Defendant attached
the certificate, which shows that he was "discharged from
all debts and claims which existed on the 6th day of Decem-
ber, 1898," on which day the petition for adjudication was
filed by him, "excepting such debts as are by law excepted from
the operation of such discharge in bankruptcy."    Plaintiff
replied, admitting the proceedings in bankruptcy as alleged;
"but plaintiff alleges that on the 6th day of December, 1898,
the defendant was not indebted to him in any sum whatever.
The plaintiff further states that the said  bank  of  Eagle
Grove, Iowa, did not call upon the plaintiff to pay said note
as surety until after December 6, 1898, and after the defend-
ant was in fact bankrupt."    The case was submitted to the
court upon an agreed statement of facts, and judgment ren-
dered in favor of plaintiff.    Defendant appeals.—*Reversed.*

   *Sylvester Flynn* for appellant.

   *Filkins & Schaffter* for appellee.

   GIVEN, C. J.—I.   The agreed statement of facts is
as follows:   "On May 26, 1900, the following agreed state-
ment of facts was filed with the clerk of the Wright county
district court, to wit:  'It is hereby agreed by and between
the plaintiff and the defendant in the above-entitled action
that on December 2, 1893, the plaintiff, C. F. Hayer signed
the note attached to this statement as surety for the defend-
ant; that the defendant failed and neglected to pay said note;
that on April 1, 1899, the plaintiff had to, and did, pay the
full amount of said note, to wit, $193.66, to the State Bank
at Eagle Grove, Iowa, and that no part of said amount has
been repaid him; that in December, 1898, the defendant

filed his petition in the district court of the United States for the Northern district of Iowa, and was duly and legally adjudged a voluntary bankrupt under the acts of congress relating to bankruptcy; that said note was duly scheduled in said bankruptcy proceedings as one of defendant's liabilities; that in such schedule the State Bank of Eagle Grove, Iowa, payee of said note, was named as the owner and holder thereof, and was duly notified of each step in said bankruptcy proceedings as required by law; that in December, 1898, plaintiff, C. F. Hayer, was informed by others of the pendency of said bankruptcy proceedings, and had actual knowledge thereof after the filing of the petition, although he was not listed as a creditor therein; that on April 3, 1899, this defendant was by the judgment of said United States court discharged from all his debts; that a certificate of such discharge was issued by said court and delivered to defendant, a copy of which certificate is attached to defendant's answer herein, and is hereby made a part of this statement of facts.' " The certificate of discharge is: "From all debts and claims which existed on the 6th day of Dec., A. D. 1898, on which day the petition for adjudication was filed by him, except such debts as are by law excepted from the operation of such discharge in bankruptcy." This claim is not of the class excepted by law. The plaintiff claims that as he had not, as surety, paid the note at the time the petition for adjudication in bankruptcy was filed, there was no debt then due to him, and he could not have his claim scheduled against the bankrupt's estate; that he had no provable claim; and that the discharge does not apply to his claim; while the defendant contends that under the facts the discharge does not apply and that therefore the court erred in rendering judgment against him.

Section 17 of the bankruptcy law of 1898, under which this proceeding was had, provides that "a discharge in bankruptcy shall release a bankrupt from all

of his provable debts," except certain debts of which
this is not one.   Section 63 in specifying debts which
may be proved and allowed, names the following:
among others: "(1) A fixed liability as evidenced by judg-
ment or an instrument in writng absolutely owing at the time
of the filing of the petition against him, whether then pay-
able or not, with any interest thereon which would have been
recoverable at that date or with a rebate of interest upon
such as were not then payable and did not bear interest.   *
*   *   (4) Founded upon an open account, or upon a con-
tract, express or implied."   Section 16 provides that the
liability of the surety for a bankrupt shall not be altered by
the discharge of such bankrupt, and paragraph "i" of sec-
tion 57 is as follows:   "Whenever a creditor, whose claim
against a bankrupt estate is secured by the individual under-
taking of any person, fails to prove such claim, such person
may do so in the creditor's name, and if he discharge such
undertaking in whole or in part he shall be subrogated to
that extent to the rights of the creditor."   Paragraph 4 of
order No. 21 of "General Orders and Forms in Bankruptcy
Established by the Supreme Court of the United States"
(18 Sup. Ct. Rep. vii.) is as follows:   "(4) The claims of
persons contingently liable for the bankrupt may be proved
in the name of the creditor when known by the party con-
tingently liable.   When the name of the creditor is unknown
such claim may be proved in the name of the party contin-
gently liable; but no dividend shall be paid upon such claim,
except upon satisfactory proof that it will diminish the *pro
tanto* original debt."

This debt was a fixed liability evidenced by an instru-
ment in writing, and absolutely owing by the defendant at
the time of the filing of the petition in bankruptcy, and
therefore might be proved against the estate as it was.   It
is the fact that the bankrupt absolutely owed this fixed liabil-
ity, evidenced in writing, at the time of the filing of the
petition, that made it provable, regardless of the person to

whom it was owing. If the creditor had failed to prove the claim, the plaintiff could have done so in its name, not because the debt was then due to him, but because it was a fixed liability, evidenced in writing, and absolutely owing by the defendant. Being proved as it was by the creditor, it was not required that the surety should take any further steps. We do not overlook the distinctions that exist as between liability of the debtor to the creditor and his liability to his surety, but we emphasize the fact that it was the fixed liability, evidenced in writing, "absolutely owing" by the defendant, that made this a provable claim against his estate. Said paragraphs in section 57 and in the general orders of the supreme court recognize the right of the surety to protect himself before payment, and when his liability is contingent, and to share in the dividends of the estate after payment. *Mace v. Wells,* 7 How. 275 (12 L. Ed. 698), decided under the bankruptcy law of 1841, is quite identical in its facts with this case, and it was there held that the plaintiff was not entitled to recover. The fourth section of the law provided that "a discharge and certificate, when duly granted, shall in all courts of justice be deemed a full and complete discharge of all debts, contracts and other engagements of such bankrupt which are provable under this act," etc. By the fifth section, "endorsers, bail, or other persons having uncertain or contingent demands against such bankrupt, shall be permitted to come in and prove such debts or claims under this act, and shall have a right whenever debts and claims become absolute to have the same allowed them," etc. The court says. "Wells, as surety, was within this section, and might have proved his demand against the bankrupt. He had not paid the last note, but he was liable to pay it as surety, and that gave him a right to prove the claim under the fifth section. And the fourth section declares that from all such demands the bankrupt shall be discharged. This is the whole case. It seems to be clear of doubt." See, also, *Crafts v. Mott,* 4 N.

Y. 604. We may say as to these sections, and the sections of the present law quoted above, as is said in the recent case of *In re Dillon* (D. C.) 100 Fed. Rep. 627,—that "the provisions of the two acts, though quite differently worded, yet reach in most respects the same results." Under both cases the surety can get nothing by way of dividend unless he pays the original debt, in whole or in part. If he discharges the whole debt, then, under the clause above quoted of section 19 of the Acts of 1867, and under section 57, par. "i," of the bankrupt act of 1898, he stands in the place of the original creditor, or is subrogated to his rights. This is true whether the payment be made before or after the bankruptcy. Plainly, the words "if he discharges such undertaking," in section 57, par. "i," are not limited to the time before adjudication. In this *Case of Dillon* it is said "That if Claffin, the creditor, had proved the original debt to him at the time of the bankruptcy, as he might ordinarily have done, McGuire [the surety], on his subsequent payment of a part of the Claffin's debt, would be subrogated to that extent to Claffin's rights. It follows, also, that, since Claffin has not proved the debt, McGuire must, if he wishes to prove, do so in Claffin's name. As he has not done this, his claim must be disallowed without any question of set-off, and the referee's judgment is therefore affirmed." In this case the creditor had proved the claim, and nothing further was required of the surety to entitle him to share in the dividends in case of payment by him. Defendant cites *In re Burka* (D. C.) 104 Fed. Rep. 326, which holds that the rights of creditors generally relate to the date of the filing of the petition, and that a claim for legal services not then in existence cannot be proven against the estate, and is not released by discharge. As already said, this was a fixed liability, evidenced in writing, and absolutely owing by the defendant at the time of the filing of the petition; and these facts render it a provable claim, regardless of whether, by transfer or otherwise, the person to whom he

owed it was changed or not. Such, we think is the plain intent of the law, and the discharge of the defendant operated to defeat the plaintiff's action.

It follows from this view of the law and facts that the judgment of the district court must be REVERSED.